UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMPSON CORRUGATED SYSTEMS, INC. and
THOMPSON CORRUGATED SYSTEMS LLC,

                Plaintiffs,

     v.

ENGICO S.R.L.,

               Defendant.

Case No. 20-cv-122-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiffs Thompson Corrugated

Systems, Inc. and Thompson Corrugated Systems LLC (collectively, "TCS") for an award of

attorney's fees, costs, and prejudgment interest (Doc. 139).  It also seeks to convert the amounts

of the jury's verdict from euros to dollars.  Defendant Engico S.r.l. has responded to the motion

(Doc. 144), and TCS has replied to that response (Doc. 145).  As a preliminary matter, the Court

will grant TCS's motion for leave to file its overly long reply (Doc. 146).

## I.    Background

This case arose out of a relationship between Engico and TCS that began in 2002 and

went south in 2019.  TCS alleged that in 2004 Engico orally agreed that TCS would jointly be

the exclusive sales representative for Engico's products—machinery to produce corrugated

materials—in North America, and that it would be paid on commission.  The relationship was

terminated in 2019.

TCS filed this lawsuit on January 30, 2020, to recover commissions it believed Engico

owed for sales of Engico machines in 2019 to Lawrence Paper Company, in 2019 to President

Container, and in 2020 to Welch Packaging.  Count I was a claim for breach of contract; Count II

was for violation of the Illinois Sales Representative Act ("IRSA"), 820 ILCS 120/0.01 *et seq.*;

Count III was for an accounting; and Count IV, pled in the alternative, was a claim for unjust enrichment.

The Court granted TCS partial summary judgment on Count I (breach of contract) and Count II (ISRA) based on the 2019 sale to Lawrence Paper and determined that the amount awardable for Count I is $202,194 in compensatory damages for unpaid commission for that sale (Docs. 95 & 108).  The Court further granted Engico summary judgment on Count IV (unjust enrichment/quantum meruit) (Doc. 95).

The remaining claims went to trial, and a jury rendered a verdict on Count I for compensatory damages in the amount of €192,000 based on the 2019 sale to President Container and for compensatory damages in the amount of €96,000 based on the 2020 sale to Welch Packaging.  As for Count II, the jury further found that Engico willfully and wantonly failed to pay commissions due to TCS in violation of the ISRA and that TCS was therefore entitled to exemplary damages in the amount of €120,000 for the 2019 sale to Lawrence Paper, in the amount of €60,000 for the 2019 sale President Container, and in the amount of €120,000 for the 2020 sale to Welch Packaging.

The Court sought further briefing from the parties on the questions of:

- whether to award prejudgment interest at the rate of 5% under the Illinois Interest Act "on money withheld by an unreasonable and vexatious delay of payment."  815 ILCS 205/2; and

- the amount of the mandatory award of fees and costs to a prevailing party under the ISRA, 820 ILCS 120/3.

TCS also raises the question of converting the jury verdict from euros to dollars.  Those issues are now before the Court.

## II.     Analysis

### A.     Currency Conversion Rate

The Court has already converted the compensatory damage amount for unpaid commissions for the Lawrence Paper sale from euros to dollars, ending up with a compensatory damage award of $202,194.  To arrive at this figure, the Court used the euro/dollar conversion rate from May 19, 2019, the date of the sale.  Engico did not dispute this calculation when it was made, so has waived any objection.

TCS now asks the Court to convert the amounts in the jury's verdict, which was rendered in euros, to dollars as well.  Engico does not dispute that the Court should apply the conversion rate from the date of the sale, but it urges the Court to use the U.S. Federal Reserve published rate rather than the slightly different rates offered by TCS.  TCS does not object to use of the rate suggested by Engico.  Using those rates, the jury's verdict is converted as follows:

| Sale to | Count | Verdict Amount | Exchange Rate | Dollar Amount |
|---|---|---|---|---|
| Lawrence Paper | II | €120,000 | 1.1241 | $134,892 |
| President Container | I | €192,000 | 1.1123 | $213,562 |
| President Container | II | €60,000 | 1.1123 | $66,738 |
| Welch Packaging via Haire | I | €96,000 | 1.1041 | $105,994 |
| Welch Packaging via Haire | II | €120,000 | 1.1041 | $132,492 |

To the extent any party objects to the submission of an exemplary damages award to the jury, the Court confirms that, for the reasons set forth below in support of its prejudgment interest award, it would make the same findings had the question been before the Court.

B.    Prejudgment Interest

TCS asks for prejudgment interest on compensatory damages at the rate of 5% under the Illinois Interest Act, 815 ILCS 205/2, on Count I from the date of each machine's sale to the date of entry of judgment.  Engico makes a *pro forma* objection repeating its position that its failure to pay commissions on the President Container and Welch Packaging sales was not unreasonable or vexatious but a good faith dispute that had not yet been settled.

The Interest Act provides that creditors shall pay prejudgment interest at a rate of 5% "on money withheld by an unreasonable and vexatious delay of payment."  815 ILCS 205/2.  The Court has discretion under Illinois law to award prejudgment interest under this statute. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 630 (7th Cir. 2009); *In re Est. of Feinberg*, 6 N.E.3d 310, 344 (Ill. App. Ct. 2014).

The Court has already determined any failure to pay the 2019 Lawrence Paper commission after the Court's July 22, 2022, order (Doc. 108) would be unreasonable and would entitle TCS to prejudgment interest on that amount from at least July 22, 2022.  The Court now turns to the issues of prejudgment interest between the date of the Lawrence Paper sale (May 19, 2019) to July 22, 2022, and prejudgment interest on the President Container and Welch Packaging sales.

The Court finds that Engico's failure to pay the commission on the Lawrence Paper sale at the time of the sale—May 19, 2019—was not unreasonable or vexatious.  Engico had conducted the sale independent of TCS and directly with Lawrence Paper.  Engico wrongfully withheld the commission, which was due based on the industry practice of compensating exclusive sales representatives for any sales within their territories, but it did not hide the sale from TCS or display any other duplicity.  This was the first time Engico had failed to pay a commission to TCS under their oral agreement, and the failure to pay was arguably not in bad

4

faith but was instead based on an honest misunderstanding of the customs and usages in the manufacturers' sales representative industry.  It is implicit in the jury's verdict that such a custom and practice was incorporated as a term of the sales representative agreement, and based on the credible expert testimony of Scott Lindberg as to industry custom and practice, the Court agrees that it was.  Engico was wrong about this, but this ignorance was not unreasonable or vexatious, at least the first time it failed to pay based on this misunderstanding.  Consequently, TCS is not entitled to prejudgment interest from as early as May 19, 2019.

The same is not true for the sales to President Container on October 30, 2019, and to Welch Packaging via Haire on January 20, 2020.  By the time TCS and Engico met on August 7, 2019, to discuss the relationship, Engico should have been disabused of its notion that it did not need to pay TCS based on industry customs and practices.  In fact, around the time of the meeting, Engico offered to pay TCS a commission on the Lawrence Paper sale, evidence of its epiphany as to its contractual obligations.

Additionally, there is evidence of Engico's bad faith in failing to pay commissions on the President Container and Welch Packaging sales.  Before either of those sales, Engico hired the Haire Group as its sales representative while it already had an exclusive arrangement with TCS, a clear violation of the obligation to act in good faith with its exclusive sales representative.  Engico then offered TCS a reduced commission on sales concluded before the end of 2019, then went through a transactional shell game to consummate the Welch Packaging sale in January 2020 and to make it appear as if the sale was not actually to Welch Packaging, a customer developed by TCS.  These shenanigans are evidence of bad faith and lead to the conclusion that the delay in payments for those commissions was unreasonable and vexatious.

In light of these facts, established by credible evidence at trial, the Court finds that Engico's failure to pay the commissions became unreasonable and vexatious as follows:

| Sale to | Amount | Date delay became unreasonable and vexatious |
|---------|--------|----------------------------------------------|
| Lawrence Paper | $202,194 | August 7, 2019 |
| President Container | $213,562 | October 30, 2019 |
| Welch Packaging via Haire | $105,994 | January 23, 2020 |

Accordingly, TCS is entitled to prejudgment interest at the rate of 5% under the Illinois Interest Act for each unpaid commission from its respective date listed above to the date of judgment. This result is consistent with the jury's findings that Engico willfully and wantonly failed to pay commissions on a timely basis and was therefore subject to exemplary damages under the ISRA. The Court leaves it to the parties to calculate the sum certain based on this method of computation.

     C.     <u>Accounting</u>

Count III, TCS's claim for an accounting of Engico's other sales in TCS's territory since January 1, 2018, is included in the Final Pretrial Order (Doc. 11) but since then has essentially been lost in the shuffle. Engico claims TCS has abandoned the claim, and indeed in TCS's closing argument counsel said it was not seeking to get paid for sales other than the complete machines. Nevertheless, in the absence of a request for voluntary dismissal, the Court must dispose of the claim.

An accounting is an equitable remedy requiring a party to give "a statement of receipts and disbursements to and from a particular source." *Tufo v. Tufo*, 196 N.E.3d 58, 82 (Ill. App. Ct. 2021). There is no absolute right to an accounting, which should be awarded only on equitable principles based on the particular facts of the case. *Id.*

TCS did not produce sufficient evidence at trial that an accounting is warranted. To the extent it claims Engico made sales in North America of products other than complete machines

during the relevant time period for which it would owe TCS a commission, TCS had the opportunity to ferret out any such sales in discovery.  At that point, it could have moved to amend the complaint to add specific allegations of those sales to the allegations of the three complete machine sales.  It did not.  At the trial itself, Fred Thompson Sr. mentions Engico's failing to give TCS billing information on other sales made "behind our back" (Trial Tr. 324:18-19), his generally lack of knowledge whether Engico had customers in North America that it did not disclose to TCS (*see, e.g.,* Trial Tr. 430-36, 478), and Engico's not ever paying TCS for selling spare and replacement parts (Trial Tr. 637:9-12; 642:22-643:2).  Other than there, there was no evidence suggesting equity requires the Court to order an accounting.

It is clear that the main thrust of this case—and the main source of damages—was unpaid commissions for the sales of complete machines, not smaller sales of parts.  While the issue of unpaid commissions on complete machines was resolved in the plaintiff's favor, there was simply not enough non-speculative evidence presented to suggest an accounting would yield any relevant information.  Therefore, TCS has not carried its burden of establishing by a preponderance of the evidence that it is entitled to an accounting.  The Court will enter judgment on Count III in Engico's favor.

D.    Attorney's Fees and Court Costs

The ISRA requires a manufacturer principal to pay a prevailing sales representative's reasonable attorney's fees and court costs to collect improperly paid commissions.  820 ILCS 120/3.  Unlike with exemplary damages, no culpability is required.  *Cent. Tower Exch. Corp. v. German Motor Parts GmbH*, 518 F. Supp. 3d 1233, 1246 (C.D. Ill. 2021) (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1009 (Ill. App. Ct. 1994)).  So long as the principal failed to pay in a timely manner, fees and costs must be awarded.

1.     Attorney's Fees

TCS asks the Court to award more than $500,000 in attorney's fees for work at all stages of this litigation, including the pending fee request.  Engico contends the request is excessive because (1) fees are not awardable for work other than litigating the ISRA claim, (2) a block billing method prevents proper examination of the time spent, (3) two of the attorneys' billing rates exceed the rate of a local attorney doing similar work and the rate one counsel represented during the relevant period as his normal billing rate, and (4) the time spent exceeded what was necessary because TCS's attorneys did not delegate work to associates or paralegals and duplicated the work they did do.

a.     Lodestar Calculation

Attorney's fee awards begin with a lodestar calculation.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The lodestar method involves "multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate."  *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Animal Legal Def. Fund v. Special Memories Zoo*, 42 F.4th 700, 707 (7th Cir. 2022).  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue*, 559 U.S. at 551 (emphasis in original).  It is strongly presumed to be sufficient because many relevant factors are already accounted for in that calculation.  *Id.* at 552-53; *Animal Legal Def. Fund*, 42 F.4th at 707.

However, the Court has discretion to make adjustments to the amount for factors specific to the litigation that the lodestar method did not take into account.  *Animal Legal Def. Fund*, 42 F.4th at 707; *see Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 685 (7th Cir. 2022).  Such factors can include "the complexity of the legal issues involved, the degree of

success obtained, and the public interest advanced by the litigation." *Cooper*, 42 F.4th at 682 (internal quotations omitted).  They can also include the rejection of a substantial settlement offer, the proportionality between the damage amount and the fee request.  *Id.* at 685, 686.

The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437; *accord Vega v. Chi. Park Dist.*, 12 F.4th 696, 702 (7th Cir. 2021).  "Once the petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness."  *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012); *accord Vega*, 12 F.4th at 703.

> b.   <u>Billing Rate</u>

TCS's primary attorneys are Adam J. Glazer, William R. Klein, and Brandon John Zanotti.  Glazer's and Klein's hourly rates increased over the two and a half years of this litigation—Glazer's from \$425 to \$450 and Klein's from \$415 to \$440.  Zanotti, who was brought in for trial, charges \$350 per hour.  TCS has supported the reasonableness of these billing rates with an affidavit from G. Patrick Murphy, who resides and practices in Southern Illinois and who himself charges \$500 per hour.  Murphy is a retired federal judge who has reviewed hundreds of fee applications as a presiding judicial officer and as a practicing attorney and is familiar with rates charged by attorneys in commercial litigation in Southern Illinois.

Engico does not object to Zanotti's rate but argues that the rates of Glazer and Klein, both of whom practice in Chicago, are excessive for work in Southern Illinois.  It faults TCS for not hiring local counsel to handle this litigation at lower local rates like Zanotti's, \$350 per hour.  Engico points to another affidavit by Glazer in another case during the relevant time period in which he states his normal hourly billing rate is \$395.  It argues that Glazer and Klein should be limited to Zanotti's rate of \$350 or, at the most, \$395 as Glazer represented in his other case.  In

support of this position, Engico submits an affidavit from Joseph Bleyer, who resides and has practiced for 37 years in the Southern District of Illinois and is familiar with the attorney's fee award process.  Part of Bleyer's practice is defending civil rights cases under 42 U.S.C. § 1983 and requests for fees under 42 U.S.C. § 1988.

The Seventh Circuit Court of Appeals has clear set forth how to determine a reasonable hourly rate:

> A reasonable hourly rate is based on the local market rate for the attorney's services.  The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (internal citation omitted); *accord Vega v. Chi. Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021).  The fee applicant bears the burden of proving the market rate, but once he provides evidence of that rate, the opposing party may attempt to convince the Court that a lower rate is justified.  *Vega*, 12 F.4th at 705; *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004).  Where out-of-town counsel's rate exceeds that of local practitioners, the Court should still use the counsel's actual billing rate unless the Court finds that a local attorney could have done an equivalent job and there was no reason for out-of-town counsel to perform the work.  *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003).

TCS has provided affidavit evidence of the customary hourly rates for commercial litigation for the billing professionals during the life of this case.  Glazer explains in a supplemental affidavit that the lower hourly rate of $395 he charged in another case to another client was because when that case began in 2018, his rate was $395 and, as an accommodation to that client, he continued to charge the same rate throughout the litigation.  Thus, that lower rate is not inconsistent with billing $425 per hour to begin with in this case, which was filed in 2020,

10

and for which Glazer did not extend the same voluntary rate-freeze.

The Court is satisfied from Glazer's affidavits that his and Klein's rates are the local market rates for attorney services in cases of this type.  Glazer and Klein have substantial experience representing manufacturers' sales representatives in disputes with manufacturers, and Engico has not pointed to any local counsel with this type of knowledge and experience who was qualified and could have been retained at a lower rate for this complex, international case. Murphy's affidavit confirms that those rates are not out of the mainstream for local counsel in this type of commercial litigation.

Engico does not challenge the rates TCS proposes for the other professionals who worked on this case, and the Court sees nothing out of the ordinary about those reasonable rates.

For these reasons, the Court finds that billing rates requested are appropriate.

c.   <u>Hours Expended</u>

In its original motion, TCS's attorneys and paralegals spent 1,329.8 hours on this case.  It has supported the hours worked with billing statements made contemporaneously with the work done, although often in "block billing" form where several tasks are listed in one block of time without distinguishing how long each took to accomplish.  In its reply brief, TCS asks for additional attorney's fees incurred in seeking prejudgment interest.

Again, Engico focuses its criticism on Glazer's and Klein's time, not the other professionals working for TCS on this case.  Engico contends TCS's "block billing" is insufficient to justify the fees requested because there is no way for the Court to determine whether the time spent on a particular task was reasonable and necessary if it is camouflaged among other tasks done by the same person on the same day.  As an example, it points to block billing entries from August 3, 2022, for multiple hours of work by Glazer and Klein that include remote attendance at a 20-minute hearing and other tasks (Doc. 139 at 55).  It notes that a

11

majority of Glazer's and Klein's hours are contained in block billing entries.  Engico also asks the Court to reduce the hours expended by Glazer and Klein because their work was inefficient and duplicative.  Both Glazer and Klein are partners at their firm, and they performed much work themselves rather than delegating it to cheaper associate attorneys.  Engico proposes reducing Glazer's or Klein's hours worked by more than 300 hours to compensate for the foregoing complaints.  Finally, Engico points to one 0.3 hour entry by Glazer in May 2022 that was actually for work on another matter.

It is true that TCS's counsel spent a rather large amount of time litigating this case.  However, the particular circumstances of this case show that it required a large amount of time.  Engico and its personnel reside in Italy while this litigation proceeded in the United States.  Discovery was necessarily more burdensome because there was no written contract that could simply be produced and litigated;  its existence, terms, and performance needed to be reconstructed through depositions, experts, and paper trails.  Depositions were complicated and protracted in part because of the language barrier between the litigants and attorneys.  In addition, discovery was voluminous, and pretrial motion practice was active.  And this was all against the background of the COVID-19 pandemic, which complicated everything to do with litigation, including the travel plans of participants residing in Italy and elsewhere.  The trial of this case was set and continued five times by pandemic exigencies or the requests of TCS and/or Engico.  Each time it was reset, the trial preparation period for the earlier trial date had already begun, especially the last two continuances, which occurred about a month before the trial was to start.  The constant rescheduling necessarily resulted in conducting some trial preparation activities multiple times.  This is not anyone's fault but is simply one of the hazards of litigating a complicated international case during a pandemic.  If Engico did not want to risk a ballooning attorney's fee award in light of the circumstances, it could have more zealously pursued pretrial

12

settlement negotiations or made an offer of judgment.  Having set forth the background against which this litigation unfolded, the Court turns to Engico's specific criticisms about TCS's counsel's hours expended on the case.

As noted above, the party seeking fees is responsible for documenting the hours worked with the "level of detail that paying clients would be likely to find acceptable."  *Vega v. Chi. Park Dist.*, 12 F.4th 696, 703 (7th Cir. 2021).  An attorney's billing statement should be "sufficiently detailed to permit adequate review of the time billed to specific tasks."  *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).  The Court should not allow payment for hours spent by counsel that would not ordinarily be billed to a paying client or are easily delegated to non-professional staff such as a secretary.  *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999).  Such hours are not reasonable or necessary.  *Id.*  The Court may also disallow hours as not reasonably expended if they are "excessive, redundant, or otherwise unnecessary."  *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).  However, "determining what qualifies as a 'reasonable' use of a lawyer's time is a highly contextual and fact-specific enterprise," so district courts have wide latitude to set awards of attorney's fees. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010).

There is nothing inherently wrong with "block billing," although it is not likely to provide the best possible descriptions of an attorney's work.  *See Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 569 (7th Cir. 2006).  Nevertheless, it is within professional norms not to itemize bills by every single task.  "[H]aving attorneys keep detailed records is a cost that many clients prefer to avoid," *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999), and block billing can be an acceptable compromise between, on the one hand, incurring additional fees for keeping microscopically detailed track of time and, on the other hand, accounting for time spent.  Indeed, both parties' attorneys used block billing in their

13

timesheets to some extent.

The Court has reviewed TCS's counsel's block billing entries and finds that they contain the level of detail acceptable when billing a private client.  Even though they are frequently billed in blocks, the level of detail of the tasks within the blocks is sufficient to allow the Court—and a paying client—to determine what the attorney did and that the time spent for the sum of all the listed activities within a block was not unreasonable.  Engico's request, supported by Bleyer's affidavit, to cut substantial chunks of time from the bill simply because of block billing is unreasonable.

Engico asks the Court to reduce the hours expended by Glazer and Klein because their work was inefficient for failing to delegate it to lower-billing professionals and for duplicating each other's work.  However, Engico makes only general assertions and has not pointed to any specific billing entry with a task that it believes should have been done by someone other than Glazer and Klein or any specific billing entries that unreasonably or unnecessarily duplicate the other's work.[1]  Indeed, the Court's examination of the pretrial preparation period in early August reveals that administrative tasks were performed by paralegals, not Glazer or Klein, and that Glazer and Klein were faced with multiple issues—trial preparation, pretrial attachment, and settlement negotiation, just to name a few—for which the time they billed seems reasonable in the aggregate.  Additionally, nothing jumps out at the Court from that review to show unreasonable duplicate tasks by Glazer and Klein.  In the absence of any specific citations to improperly billed tasks, the Court cannot say any other billed hours are excessive except for the

---

[1] Engico mentions 19 hours on jury instructions and 43.9 hours depositions for which Klein prepared but did not take.  It does not, however, point the Court to the billing entries with sufficient specificity for it to review them.  "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)—or in 52 pages of billing entries.

0.3 hours Glazer billed on another matter, which it will removed from Glazer's fee request.

To the extent Engico believes Glazer and Klein spent too much time on summary judgment briefing or trial preparation, there is no evidence Bleyer's opinion adequately considered the complexities of this case, the immensity of the tasks to be performed by a plaintiff's counsel preparing for trial at which the plaintiff carries the burden of proof, and the difficulties getting this case to trial that the Court has described above. As noted above, TCS's counsel did spend a lot of time litigating this case, nothing suggests the time was excessive, and that work clearly enabled TCS to achieve an excellent result on summary judgment and at trial.

In sum, TCS has adequately supported as reasonable the time spent litigating this case, and, with one exception, Engico has not carried its burden of demonstrating the amount of time was unreasonable. *See Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012); *Vega v. Chi. Park Dist.*, 12 F.4th 696, 703 (7th Cir. 2021). The one exception is the 0.3 hours Glazer misbilled to this case. Accordingly, the Court will deduct $135.00 ($450 x 0.3) from the amount TCS requests in attorney's fees.

In light of the foregoing, the lodestar calculation based on hours reasonable expended at reasonable hourly rates is $499,184.50. This amount includes the $477,864.50 requested for work by Glazer's firm reduced by $135.00, and the $21,455.00 requested for work by Zanotti's firm.[2]

The Court declines to award fees at this time for TCS's counsel's work on the current motion. Those fees were requested in their reply brief to which Engico did not have an opportunity to respond. The Court will not delay entry of judgment to await a decision on those fees. *See* Fed. R. Civ. P. 58(e). It will consider that request post-judgment and enter a

---

[2] To the extent these sums differ from the amounts requested in TCS's motion or Glazer's affidavit, the Court has relied on the exhibits to support its calculations.

supplemental fee award if necessary.  The Court now turns to potential adjustments to the lodestar calculation.

### d.   Segregation of Counts

Engico asks the Court to lop off 75% of the lodestar amount because fees are only awardable on Count II, the ISRA count.  The ISRA does not authorize a fee award for the other three counts, two of which TCS unquestionably lost.  Engico argues that TCS's counsel was negligent in not keeping separate billing entries for work done on Count II and that, as a consequence, the Court cannot separate out the work for which fees are awardable under the ISRA and should reduce the fee requested accordingly.  Engico counters that because all claims were based on a common core of facts, the Court should award fees irrespective of any attachment to a particular legal theory.

*Hensley v. Eckerhart*, 461 U.S. 424 (1983), sets forth the general rules for awarding attorney fees in multiple-claim cases where a plaintiff did not prevail on all claims, albeit in the context of a fee award under 42 U.S.C. § 1988.  *Hensley* established that, under the lodestar method, the extent of a plaintiff's success should be considered when determining a "reasonable" fee award, including whether it incurred fees pursuing unsuccessful claims.  *Id.* at 433.  In this situation, the Court asks two questions:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Id.* at 434; *accord Vega v. Chi. Park Dist.*, 12 F.4th 696, 703 (7th Cir. 2021).

Where two entirely distinct and separate claims in the same case request relief based on different facts and legal theories, and counsel's work on one claim is unrelated to work on the other claim, counsel's work on the unsuccessful claim cannot be part of a reasonable fee award.  *Hensley*, 461 U.S. at 434-35; *Vega*, 12 F.4th at 703 (citing *Ibrahim v. U.S. Dep't of Homeland*

16

*Sec.*, 912 F.3d 1147, 1174 (9th Cir. 2019).

On the other hand, where multiple claims "involve a common core of facts" or are "based on related legal theories," and where counsel's time is "devoted generally to the litigation as a whole," it may be difficult to tease out work done on any one particular claim. *Hensley*, 461 U.S. at 435; *Vega*, 12 F.4th at 703 (paraphrasing *Hensley*'s test as whether the claims "arose out of the same course of conduct"); *see Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 272 (7th Cir. 1992). In that case, the Court should not treat the causes of actions as discrete claims and should consider the significance of the overall relief obtained in the lawsuit as a whole. *Hensley*, 461 U.S. at 435. If plaintiff's counsel achieved "excellent results," counsel should recover a full fee award without a reduction for the lack of success on every contention in the lawsuit or the rejection of alternative legal theories. *Id.*

It would be improper to reduce the lodestar amount in this case simply because TCS did not prevail on all claims or receive the full amount of exemplary damages it requested. All four counts in this case involved the same core of facts—TCS's relationship with Engico and Engico's obligations to pay commissions in accordance with that relationship. They also involved related legal theories, so much so that the first element in TCS's ISRA claim *was the very question* at issue in the breach of contract claim—whether Engico owed TCS a commission under their oral agreement. Counts I and II are inextricably intertwined, and attributing work on the case to one or the other counts is neither feasible nor productive. Work on Count I was essentially work on Count II.

Count IV, which TCS clearly lost simply because there *was* a contract between the parties, was an equitable claim for unjust enrichment pled as an alternative to Count I and involved the exact facts merely under a different legal theory. Likewise, Count III is grounded on the assertion that the contract alleged in Count I existed and that there was good reason to

17

suspect Engico was not abiding by it in instances other than the three specific sales at issue in this case.  Count III was the least significant claim in this case and was likely to have had minimal impact, if any, on the number of hours billed.  Accordingly, even though TCS lost on those two counts, no adjustment to the lodestar is warranted simply because of those losses.

In light of the Court's summary judgment ruling and the jury verdict, the Court finds that TCS obtained "excellent results" even if it did not recover the entire amount of exemplary damages it requested and did not prevail on every claim.  TCS substantially prevailed in the gravamen of its complaint—that Engico owed it commissions and willfully and wantonly, and sometimes unreasonably and vexatiously, withheld the payments due—and was awarded all of the compensatory damages it sought.  No reduction of the lodestar amount, much less a 75% reduction, is warranted based on the fact that only Count II included an express award of attorney's fees or the fact that TCS failed to segregate its billing for litigation of Count II.

In sum, no compelling justification for an adjustment to the lodestar calculation has been offered, so the Court will award the lodestar-calculated fees.

### 2.   Court Costs

TCS asks for costs in the amount of $91,559.34, which includes the bond to secure prejudgment attachment, expert fees and expenses, transcript expenses, travel expenses, interpreter, and run-of-the-mill litigation expenses.  Engico argues that there is no authority to recover the cost of obtaining a bond, court reporter fees, deposition fees of testifying witnesses; that certain substantial travel costs could have been avoided by hiring local counsel; and that the expert witness fee lacks an itemization of the expert's charge and is not supported by legal authority.

When reviewing a request for costs, the Court asks two questions:  "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that

item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000), *cited by Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022).

In this case, there are two sources of a cost award:  state and federal.  Under state law, the ISRA requires a noncompliant manufacturer principal to pay a prevailing sales representative's reasonable "court costs" to collect improperly paid commissions.  820 ILCS 120/3.  In federal court, the Court presumes that a prevailing party is entitled to "costs" as a matter of course, *Krocka v. City of Chi.*, 203 F.3d 507, 518 (7th Cir. 2000), but has the discretion to deny or reduce costs where warranted, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

Illinois law distinguishes "court costs" from "litigation costs" and defines "court costs" as "charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees," as well as "subpoena fees, and statutory witness fees." *Vicencio v. Lincoln-Way Builders, Inc.*, 789 N.E.2d 290, 295 (Ill. 2003); *accord DiFranco v. Kusar*, 90 N.E.3d 556, 566 (Ill. App. Ct. 2017).  "Witness fees" include statutory witness and mileage fees. *Vicencio*, 789 N.E.2d at 304.  "Litigation costs," on the other hand, are "the expenses of litigation, prosecution, or other legal transaction." *Id* at 395. (internal brackets omitted).

In federal court, there is a presumption that the cost items enumerated in 28 U.S.C. § 1920 are awardable to a prevailing party under Federal Rule of Civil Procedure 54(d). *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022).  Those taxable costs are:

    (1)    Fees of the clerk and marshal;
    (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)    Fees and disbursements for printing and witnesses;
    (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5)    Docket fees under section 1923 of this title;
    (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section

1828 of this title.

28 U.S.C. § 1920.

The specific items to which Engico objects are:

*Cost of Bond*:  The Court declines to award as costs the amount TCS was required to expend to obtain a bond in support of its prejudgment attachment request.  The decision to seek prejudgment attachment and to obtain the bond was TCS's decision, not a requirement imposed by the Court.  The only requirement imposed by the Court was a deadline for posting the bond. Furthermore, TCS has cited no authority for awarding the cost of obtaining a bond for prejudgment attachment.

*Attorney Travel Costs*:  Reasonable travel costs are awardable as part of a reasonable attorney's fees.  The travel costs requested in this case are reasonable in light of the circumstances.  Those costs are not rendered unreasonable simply because TCS did not hire other lawyers living in Southern Illinois.

*Expert Witness Fees*:  The witness fee allowed in 28 U.S.C. § 1920(3) includes only amounts allowed under 28 U.S.C. § 1821 unless a statute or contract provides otherwise.  *Lane*, 40 F.4th at 815 (citing *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441 (1987)).  Under 28 U.S.C. § 1821, a witness is only entitled to a *per diem* fee of $40 for every day spent in deposition or trial or getting to deposition or trial, along with travel and subsistence expenses. "[A] party's own expert witness fee generally is not recoverable as a cost."  *Lane*, 40 F.4th at 815; *Abernathy v. E. Ill. R.R. Co.*, 940 F.3d 982, 994-95 (7th Cir. 2019); *compare Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 851-52 (7th Cir. 2012) (noting expert fees may be awarded under Federal Rule of Civil Procedure 26(b)(4)(E) for time spent responding to discovery); *Friedrich v. Chi.*. 888 F.2d 511 (7th Cir. 1989) (under 28 U.S.C. § 1988, expert witness fees awardable to plaintiff as attorney's fee); *Heiar v. Crawford Cnty., Wis.*, 746 F.2d 1190, 1203 (7th Cir. 1984)

(under 28 U.S.C. § 1988, some non-taxable expenses that do not fall within the statutory definition of "costs" are reimbursable as part of reasonable attorney's fees, citing "expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses"). Considering that the fee award in this case is not requested pursuant to Federal Rule of Civil Procedure 26 or 28 U.S.C. § 1988, the Court will allow costs for TCS's expert Scott Lindberg in the following amount:

| | |
|---|---|
| $40/day for 3 days = | $120.00 |
| July 14, 2021, deposition (no travel) | |
| August 24, 2022, trial testimony (travel August 23, 2022) | |
| Travel expenses = | $1,334.72 |
| **Total Expert Witness Fees** | **$1,454.72** |

*Court Reporter Attendance and Transcript Fees*:  These fees are authorized as "court costs" under Illinois law and/or as fees for printed or electronically recorded transcripts necessarily obtained for use in the case under 28 U.S.C. § 1920(2).

*Deposition Fees*:  These fees are authorized as fees for printed or electronically recorded transcripts necessarily obtained for use in the case under 28 U.S.C. § 1920(2).  The Court notes that depositions can be necessary even where the deponent testifies in person at trial, including when used on summary judgment as in this case.

*Miscellaneous Items*:  Engico objects a handful of other costs TCS requests without citing legal authority to support its objection.  The Court has reviewed the list of expenses and, with two exceptions, finds the items authorized by the foregoing authority and reasonable. It will therefore award those items as costs.  The two exceptions are two expenses labeled "Other" in the amount of $1,665.00 on March 24, 2021.  The Court will not award those amounts as costs because they are not adequately explained.

In sum, the Court will award TCS costs as follows:

| | |
|---|---|
| Costs of Bond | $0 |
| Expert Witness Fee:  Scott Lindberg | $1,454.72 |
| Billed Expenses (Doc. 139, Ex. 3, excluding "Other" charges) | $13,342.92 |
| Court Reporter/Transcript Fees | $4,926.70 |
| **Total** | **$19,724.34** |

Any other requested costs are not adequately supported by evidence of their nature and/or

necessity.

## IV.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** TCS's motion for leave to file an overly long reply brief (Doc. 146);

- **GRANTS in part** and **DENIES in part** TCS motion for an award of attorney's fees, costs, and prejudgment interest, and to convert the jury's verdict from euros to dollars (Doc. 139);

- **ORDERS** a total compensatory damage award on Count I of $521,750.00 ($202,194.00 for the Lawrence Paper sale; $213,562.00 for the President Container sale; and $105,994.00 for the Welch Packaging sale);

- **ORDERS** a total exemplary damage award on Count II of $334,122.00 ($134,892.00 for the Lawrence Paper Sale; $66,738.00 for the President Container sale; and $132,492.00 for the Welch Packaging sale);

- **ORDERS** that TCS shall be awarded prejudgment interest under the Illinois Interest Act on Count I at the rate of 5% as follows:  on $202,194.00 as of August 7, 2019, until the date of judgment; on $213,562.00 as of October 30, 2019, until the date of judgment; and on $105,994.00 as of January 23, 2020, until the date of judgment;

- **DISMISSES** Count III **with prejudice**;

- **ORDERS** that TCS is entitled to an award of attorney's fees in the total amount of $499,184.50 ($477,729.50 for work by Glazer's firm and $21,455.00 for work by Zanotti's firm);

- **ORDERS** that TCS is awarded costs in the total amount of $19,724.34; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

To the extent TCS seeks attorney's fees and costs incurred in its efforts to recover

prejudgment interest and fees post-verdict, it may file a motion seeking such an award within 14

days after entry of this order.  Pursuant to Federal Rule of Civil Procedure 58(e), the Court will

not delay entry of final judgment for a potential supplemental cost or fee award.

**IT IS SO ORDERED.**
**DATED:  January 17, 2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
